**UNITED STATES ex rel. PORTER v. YALE, Immigration Inspector.**

(District Court, N. D. New York. September 3, 1926.)

Aliens ⬡➝46, 53—Immigration authorities may exclude alien applying for temporary entry as visitor, and need not admit on bond.

Immigration authorities are vested with a discretion as to admission of an alien applying for admission temporarily as a visitor, and are not bound to admit such alien on giving a bond to insure departure, as provided by Immigration Act of 1924 (Comp. St. 4289¾–4289¾nn).

Habeas Corpus. Petition by the United States, in behalf of Rosa Porter, an alien, for writ of habeas corpus, to be directed to one Yale, as Immigration Inspector. Writ dismissed, and prisoner remanded.

Francis E. Hamilton, of New York City, for relators.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y., opposed.

COOPER, District Judge. This is a habeas corpus proceeding. On the return of the writ on the 6th day of April, 1926, respondent moved to dismiss the writ. Decision being reserved, the respondent filed his return, to which there is no traverse, and renewed the motion to dismiss.

Rosa Porter, the alien in whose behalf the writ was issued, is a native of Odessa, Ukraine, 24 years of age, an orphan, having no brother or sister. She arrived at the port of New York September 9, 1925, on the steamship Veendam, destined to her uncle, Abraham Parris, 1457 St. Urbain street, Montreal, Canada. She had passport No. 21894 of the Union of Socialist and Soviet Republics of the Ukraine, issued at Odessa, July 22, 1925, and valid until July 22, 1926. Attached to the passport was transit certificate No. 11 of the American consulate at Riga, Latvia, authorizing her to pass through American territory in transit to Montreal, Quebec, via New York, N. Y., entering September 18, 1925, and departing from the United States at Rouse's Point September 23, 1925. She was permitted by the United States immigration officers at the port of New York to proceed in immediate and direct transit through the United States to Canada.

October 26, 1925, she applied to the United States immigration officer in Montreal, Canada, for permission to go to the United States. She was given a hearing by the board of special inquiry of the United States Immigration Service at Montreal, which refused her admission on the ground that she was an alien not in possession of a proper passport and visa, and on the further ground that she was a person likely to become a public charge. She appealed from this decision to the Secretary of Labor, and the findings of the board of special inquiry were sustained, and she was so notified in writing on November 7, 1925.

On the 30th day of March, 1926, at about 9 p. m. the said alien, Rosa Porter, applied to the immigration inspector in charge at Rouse's Point, N. Y., for admission to the

United States. At that time and place she was given a hearing before a board of special inquiry at Rouse's Point, N. Y., and said board thereupon refused to grant her application for admission to the United States on the following grounds: (1) That she was a person liable to become a public charge. (2) That she was reapplying for admission within one year of her previous exclusion; consent to reapply not having been given her by the Secretary of Labor. (3) That she was not in possession of an immigration visa or a passport visaed for admission to the United States.

The first two of these grounds may be disregarded, in view of the opinion hereafter referred to. She was advised thereupon of her right to appeal to the Secretary of Labor, but declined to appeal. The testimony taken upon both her attempts to enter the United States is attached to the return.

At the hearing of October 26, 1925, at Montreal, the alien said she could furnish a bond of $500, and her counsel asked that the American consul at Montreal be notified to issue a passport visa upon production of a letter from the United States Fidelity & Guaranty Company to the effect that that company will furnish a bond of $500, conditioned upon the departure of the alien from the United States, and also that the alien shall not become a public charge. Such letter, it appears, was shortly thereafter produced, but the request of the counsel for the alien was not granted. Such letter, it appears, has recently been withdrawn.

At the hearing in Montreal the alien testified that she could get no work in Russia and was supported by her uncle in Montreal. It appeared, also, that she had not worked since her arrival in Canada, and that the $40 she then possessed was given her by her uncle in Montreal.

At her second hearing of March 30, 1926, at Rouse's Point, the alien testified that she was employed as a finisher in Montreal, had $25 in her possession, and $35 in a bank in Montreal. On both occasions she claimed she desired only to visit another uncle in New York City, one Max Gruber, of 254 Broome street.

The relator insists that she is not an immigrant, quota or nonquota, but is merely an alien residing with relatives in Montreal, who wishes to visit another relative in New York City, and has unlawfully been deprived of her right to do so by the alleged arbitrary action of the United States immigration authorities in Montreal and Rouse's Point.

The question here turns upon whether or not any discretion is vested in the immigration authorities. In other words, must such authorities be bound by the statement of the alien that she is a visitor, and not an immigrant, and are their powers limited to requiring a $500 bond for the departure of the alien? If such is the construction of the statute and regulations, then, indeed, the immigration law is as feeble as the relator claims. Every alien who is willing to testify that the purpose of entry is a visit and can procure a $500 bond can enter the country without let or hindrance.

In the absence of alien registration, every such person may lose himself or herself in the populous parts of the country, and remain the rest of his or her natural life. It means, in short, that every alien who can procure a $500 bond may enter the country. Such a construction flouts the purpose of the immigration law, and exclusion or limitation is largely a myth.

In the cases of U. S. ex rel. Tamara Johanson and Others v. Clifford D. Phelps, United States Immigration Officer, 14 F.(2d) 679, decided July 29, 1926, Judge Hough in a well-considered opinion held that the statute was valid, that the proclamation and regulations thereunder were also valid and were within the scope and purpose of the statute, and that the immigration officers were vested with discretion to determine whether or not the alien demanding admission was in fact a visitor in good faith or an immigrant in disguise.

The evidence here warranted the decision made by the immigration officers, and hence the court has no power to interfere with the action of the officers. On the authority of Judge Hough's decision, the writ is dismissed and the prisoner remanded.

The alien having been allowed to return to Montreal pending this decision, no further action by the officers having her custody is necessary.