**UNITED STATES ex rel. LONDON v. PHELPS, Immigration Inspector.**

Circuit Court of Appeals, Second Circuit.
November 1, 1927.

No. 32.

**1. Statutes ⬿51—Adoption of earlier statute by reference makes it part of later act, as though incorporated therein.**

The adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length, and brings in all that is fairly covered by the reference.

**2. War ⬿33—Joint resolution terminating war held not to abrogate operation of presidential regulations relating to passports and visés (22 USCA §§ 223–227; Comp. St. § 3115¹⁴⁄₁₅f).**

Act March 2, 1921, § 1 (22 USCA § 227), continuing the provisions of Act May 22, 1918 (22 USCA §§ 223–226), "in so far as they relate to requiring passports and visés," which are the provisions empowering the President to make regulations respecting the entry or departure of aliens, removed such provisions from the class of war legislation, so that their operation was not terminated by Joint Resolution March 3, 1921 (Comp. St. § 3115¹⁴⁄₁₅f), in view of Act Nov. 10, 1919 (Comp. St. §§ 7628i–7628m).

**3. Aliens ⬿39, 46—Executive order, requiring alien visitors to present passports visaed by consul, held valid and applicable to British subject coming through Canada; "citizen of Canada;" "British subject domiciled therein" (22 USCA § 227; Immigration Rules July 1, 1921, rule 3, subd. F, par. 2).**

Executive order of the President, No. 4125, dated January 12, 1925, requiring all nonimmigrant aliens to present, as a condition of entry into the country, passports duly visaed by consular officers of the United States, held a valid regulation under Act March 2, 1921, § 1 (22 USCA § 227), and applied to a British subject of Russian birth, who came to Canada under a British passport; such visiting alien not being within the exception of Immigration Rules July 1, 1921, rule 3, subd. F, par. 2, being neither a "citizen of Canada" nor a "British subject domiciled therein."

**4. Aliens ⬿39—Giving of consular visé on passport of visiting alien is not ministerial act, but involves discretion, not reviewable by courts.**

Giving of consular visé under Executive Order of the President No. 4125, of January 12, 1925, requiring nonimmigrant aliens, seeking to enter United States, to present passports duly visaed by consular officers of the United States, is not a ministerial act, which the consul is bound to perform, and the omission of which the court can regard as immaterial, but involves exercise of discretion, which cannot be reviewed by the courts.

Appeal from the District Court of the United States for the District of Vermont.

Habeas corpus by the United States, on the relation of Isabel London, against Clifford D. Phelps, United States Immigration Inspector. From an order discharging the writ (14 F.[2d] 679) relator appeals. Affirmed.

Francis E. Hamilton, of New York City (Harold Van Riper, of New York City, of counsel), for appellant.

H. Ely Goldsmith, of New York City, as

amicus curiæ, filed a memorandum in behalf of relator.

Harry B. Amey, U. S. Atty., of Burlington, Vt.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The relator, Mrs. London, is a British subject of Russian birth. She came to Canada in possession of a British passport and sought to obtain from the United States consul at Montreal a visé of her passport authorizing her to enter temporarily to visit her children, all of whom live in or near New York City. Such visé having been refused, she presented herself on July 24, 1926, at the United States immigration station at St. Albans, Vt. After a hearing before a Board of Special Inquiry, she was detained as an alien who had entered the United States without a passport properly visaed by an American consul. Thereupon this writ of habeas corpus was sued out. Upon the hearing the court discharged the writ and remanded the relator to the custody of the respondent. (D. C.) 14 F.(2d) 679.

The requirement of a visé is found in the President's Executive Order No. 4125, dated January 12, 1925, which provides, with certain exceptions, that aliens who are nonimmigrants "must present passports * * * duly visaed by consular officers of the United States." See U. S. Dept. Labor, Immigration Laws and Rules of July 1, 1925, p. 67. Authority for such order is found in the Act of May 22, 1918 (40 Stat. 559 [22 USCA §§ 223-226]), as amended by the Act of March 2, 1921 (41 Stat. 1205, 1217 [22 USCA § 227]). The former act authorized the President, "when the United States is at war," to make reasonable rules, regulations, and orders with respect to the entry and departure of aliens. The later act declares:

"That the provisions of the Act approved May 22, 1918, shall, in so far as they relate to requiring passports and visés from aliens seeking to come to the United States, continue in force and effect until otherwise provided by law." Section 1.

It is to be noted that the Act of May 22, 1918, did not contain the words "passports and visés," but no doubt can be entertained that the power conferred upon the President to make "reasonable rules, regulations and orders" was sufficient to empower him to require consular visés upon the passports of entering aliens. Congress itself so interpreted it in the Act of November 10, 1919, which was to extend the President's powers to

March 4, 1921, if peace should be earlier declared. 41 Stat. 353 (Comp. St. §§ 7628i–7628m). The President exercised his powers by an Executive Order dated August 8, 1918. That order, however, excepted from its passport requirement aliens coming from Canada.

The appellant contends that the Act of March 2, 1921, which continues in force the provisions of the 1918 act "in so far as they relate to requiring passports and visés," crystallized into permanency the then existing regulations regarding passports and visés, and that the President's power to modify those regulations or make new ones was not continued. From this premise it would follow that the Executive Order of January 12, 1925, was invalid, and that the relator was entitled to enter from Canada for a temporary visit without passport and visé. The refusal of the trial court to adopt this premise is the assignment of error most strongly pressed upon us.

[1, 2] The appellant's contention finds no support, in our opinion, either in the words of the legislation or in the case law. The adoption of an earlier statute by reference makes it as much a part of the later act as though it had been incorporated at full length, and brings in all that is fairly covered by the reference. Engel v. Davenport, 271 U. S. 33, 38, 46 S. Ct. 410, 70 L. Ed. 813. The Act of March 2, 1921, expressly continues "the provisions" of the earlier act "in so far as they relate to requiring passports and visés." The provisions which empower the President to make regulations respecting the entry or departure of aliens may fairly be referred to as provisions which "relate to requiring passports and visés." The purpose and effect of the Act of March 2, 1921, was not merely to extend the duration of existing regulations, but was to do away with the limitation of the earlier act, which restricted the President's power to "when the United States is at war." It removed these provisions from the class of so-called "war legislation," so that their operation was not terminated by the Joint Resolution of March 3, 1921 (41 Stat. 1359 [Comp. St. § 3115¹⁴/₁₅f]). United States ex rel. Le Grazie v. Wallis (D. C.) 278 F. 838, affirmed 278 F. 840 (C. C. A. 2); Flora v. Rustad, 8 F.(2d) 335 (C. C. A. 8); Takeyo Koyama v. Burnett, 8 F.(2d) 940 (C. C. A. 9).

Subsequent to March 2, 1921, Executive Orders have been promulgated both by President Harding and by President Coolidge under authority of the 1918 act as continued by the act of 1921. No decision has been cited which suggests any doubt of the valid-

ity of such orders, except Johnson v. Keating, 17 F.(2d) 50 (C. C. A. 1). That case, however, holds merely that the President's powers were terminated as to immigrants by the Immigration Act of 1924 (8 USCA §§ 145, 146, 166, 167, 179, 201–226, 229). The appellant in the instant case is avowedly not an "immigrant," but a temporary visitor, within the definition of that act, and, as such, is by section 3 expressly excluded from the provisions of the act of 1924 (43 Stat. 154 [8 USCA § 203]). See Chryssikos v. Commissioner, 3 F.(2d) 372 (C. C. A. 2).

[3] We conclude, therefore, that the Executive Order of January 12, 1925, was a valid regulation, and required that the relator, before entering as a temporary visitor, present a passport duly visaed by an American consul. This accords with the holdings or dicta of all cases dealing with the problem which have been discovered. United States ex rel. Porter v. Yale, 14 F.(2d) 682 (D. C. N. D. N. Y.). And see Throumoulopolou v. United States, 3 F.(2d) 803 (C. C. A. 1); Flora v. Rustad, supra; Takeyo Koyama v. Burnett, supra; United States v. Wallis, supra. She was not within the exception of paragraph 2, subdivision F, rule 3, of the Immigration Rules of July 1, 1925, for she was neither a "citizen of Canada" nor a "British subject domiciled therein." Avowedly she came to Canada with the intention of remaining there only until she could effect entry into the United States for a visit to her children.

[4] It is urged that, even if a visé was lawfully imposed as a condition upon a nonimmigrant's entry, the giving of a visé is a ministerial act, which the consul was bound to perform, and consequently the court should regard its omission as immaterial. With this we cannot agree. Certainly the giving of a visé is not merely a ministerial act, because some inquiry on the spot, some determination of fact, is essential. It is admitted that the consul may withhold his visé if he believes the passport not to be genuine, or not in the hands of the rightful holder. The instructions of the Secretary of State which supplement the Executive Order, also require the consul to "satisfy himself of the temporary nature of the visit" of the alien. Whether the consul has acted reasonably or unreasonably is not for us to determine. Unjustifiable refusal to visé a passport may be ground for diplomatic complaint by the nation whose subject has been discriminated against. See 3 Moore's Digest, 996. It is beyond the jurisdiction of the court.

As the relator had no visaed passport, her exclusion was proper, and the order discharging the writ is affirmed.